# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

HYUNDAI MOTOR AMERICA, INC.,
a California corporation, HYUNDAI
MOTOR COMPANY, a Korean
corporation,

        Plaintiffs,

vs.

FLEET SERVICE AUTOMOTIVE,
LLC, a Michigan limited liability
company, and FLEET SERVICE CORE
SUPPLY, INC., a Michigan corporation,

        Defendants.

Case Number: _____
Hon. _____
Hon. Mag. _____

---

**COMPLAINT FOR: (1) TRADEMARK INFRINGEMENT (15 U.S.C. § 1114); (2) INDUCING TRADEMARK INFRINGEMENT (15 U.S.C. § 1114); (3) CONTRIBUTORY TRADEMARK INFRINGEMENT (15 U.S.C. § 1114); (4) FALSE DESIGNATION OF ORIGIN (15 U.S.C. §§ 1125(a)(1)(A) and (a)(1)(B)); (5) TRADEMARK DILUTION (15 U.S.C. § 1125(c); (6) COMMON-LAW TRADEMARK INFRINGEMENT; (7) COMMON-LAW UNFAIR COMPETITION; and (8) VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT, MICH. COMP. LAWS § 445.901, *et seq.*, JURY DEMAND**

---

      Plaintiffs HYUNDAI MOTOR AMERICA, INC. ("HMA") and HYUNDAI MOTOR COMPANY ("HMC") (collectively referred to herein, as appropriate, as "Plaintiffs") assert the following claims against Defendants FLEET SERVICE AUTOMOTIVE, LLC ("FSA") and FLEET SERVICE CORE SUPPLY, INC. ("FSCS") (collectively referred to herein, as appropriate, as "Defendants").

## JURISDICTION AND VENUE

1.      Jurisdiction of this action is premised upon 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

2.      This Court also has jurisdiction over the claims pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

3.      By way of non-limiting example, the damages incurred by Plaintiffs and the profits wrongfully gained by Defendants collectively exceed $75,000. Also, HMA is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located in Fountain Valley, California.  HMC is a Korean company located in Seoul, Republic of Korea. Plaintiffs are informed and believe, and on that basis allege, that Defendant FSCS is a Michigan corporation with places of business in New Hudson, Michigan and/or Novi, Michigan, and Defendant FSA is a Michigan limited liability company with places of business in New Hudson, Michigan and/or Novi, Michigan.

4.      This Court has personal jurisdiction over Defendants because, on information and belief, Defendants FSA and FSCS are a Michigan limited liability company and Michigan corporation, respectively, Defendants have been and continue to import, promote, offer for sale, sell, and/or distribute the products at issue in this Complaint into this State and District, and which conduct has caused and will continue to cause injury and damage to Plaintiffs within this State and this District, and further because Defendants continuously and systematically conduct, transact, and/or solicit business in this State and within this District.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the acts, events, and omissions giving rise to

Plaintiffs' claims occurred in this judicial district. Moreover, Plaintiffs are informed and believe and thereon allege that Defendants reside in this judicial district.

## NATURE OF ACTION

6.      This is an action for damages and injunctive relief for (i) direct and indirect trademark infringement under Sections 32, 34, and 35 of the Lanham Act, 15 U.S.C. §§1114, 1116 and 1117; (ii) false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); (iii) trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c); and (iv) related claims arising under common law and state law.

7.      HMC is a world-renowned company that manufactures Hyundai automobiles and through agreements with its authorized suppliers has manufactured Hyundai-branded parts for sale in the United States and abroad. HMA is the exclusive distributor of those Hyundai vehicles and those Hyundai-branded parts in the United States. "Genuine" Hyundai-branded parts are those that are manufactured by Hyundai authorized suppliers for such parts and then are imported into the United States and distributors by and for HMA through Hyundai's authorized chain of distribution to authorized Hyundai dealers. ("Hyundai Genuine Parts"). Hyundai authorized chain of distribution for the United States is facilitated and overseen by Mobis Parts America ("MPA"), a subsidiary of Mobis Korea. MPA obtains for the importation into the United States of Hyundai parts for Hyundai vehicles from Hyundai Mobis in Korea. Hyundai Genuine Parts are shipped from Mobis Korea to MPA distribution centers in the United States and MPA there distribute those parts to Hyundai dealers on behalf of HMA. ("Hyundai Authorized Chain of Distribution").

8.      Hyundai Genuine Parts are made to certain specifications and must meet certain quality standards applicable to the Hyundai vehicles to be sold in the

United States. That is not true for certain Hyundai-branded parts meant for sale abroad. Hyundai-branded parts that are not sourced through Hyundai's Authorized Chain of Distribution may contain numerous physical and non-physical material differences including, but not limited to, differences in packaging, labels, production methods, weight, and performance characteristics, either as a result of the difference in specifications or manufacturing processes or because parts are not "first run parts", are "seconds", defective or reject parts. Furthermore, Hyundai-branded parts that are sourced outside of Hyundai's Authorized Chain of Distribution for the United States are materially different in warranty coverage and/or protection and dealer and customer support. As such, the sales of those Hyundai-branded parts in the United States constitute illegal gray-market goods.

9.     Plaintiffs are informed and believe and thereon allege that Defendants are importing, promoting, offering for sale, advertising on the internet and through other media and/or selling Hyundai-branded parts, which were meant for sale abroad, or which are not "first run parts," which are "seconds," defective or rejected parts ("Reject Parts") to various resellers in the U.S. ("Resellers"). These Resellers then sell the parts to HMA's authorized dealers in the United States, without notifying the dealers that these parts are not Hyundai Genuine Parts, were not sourced through Hyundai's authorized chain of distribution are not covered by Hyundai warranties, and/or are Reject Parts. Plaintiffs are informed and believe and thereon allege that Defendants do not offer a warranty on the Hyundai-branded parts that they sell that is equivalent to the HMA warranties, as discussed below.

10.     Plaintiffs are informed and believe and thereon allege that Defendants are representing that the parts that they offer, promote, advertise and/or sell are "Genuine" Hyundai parts when in fact they are not. Defendant is informed and believes and thereon alleges that these parts have not been sourced through Hyundai's Authorized Chain of Distribution or are Reject Parts and thus are not

"genuine" parts for the United States. Rather, these parts contain a number of physical and non-physical material differences, including but not limited to differences in warranty protection, and constitute illegal gray market goods. Defendants' advertisement, offer, importation, promotion and sale of these parts violate Plaintiffs' statutory and common law trademark rights and constitute false designation of origin and unfair competition.

11.    Moreover, Defendants are intentionally inducing Resellers to infringe Hyundai's trademarks by, among other things, representing to those Resellers that Defendants' parts are "genuine," when they are not causing a likelihood of confusion and leading those Resellers and others to believe that the HMA warranties apply to the parts (when they do not) and that they thus do not need to (and do not) offer an equivalent warranty to dealers or end-customers. Defendants' representations regarding the "genuineness" of the parts also makes the Resellers unaware of the physical material differences between Defendants' parts and parts obtained through the Hyundai's authorized chain of distribution for the United States. Thus, the Resellers do not advise dealers and end-customers of these material differences. Instead, the Resellers advise their customers that the parts are "genuine" when they are not.

12.    These physical and non-physical differences make the parts sold by Defendants and their Resellers materially different from Hyundai Genuine Parts sold through Hyundai's authorized chain of distribution for the United States, rendering Defendants' parts illegal gray market parts.

## THE PARTIES

13.    HMA has been granted the exclusive license by HMC to distribute Hyundai brand vehicles and Hyundai parts in the United States that bear the trademarks, trade names and/or trade dress of HMC, and HMA has the right to enforce those rights and/or sub-license those rights to dealers, distributors, and

others. In that regard, HMA sources parts for sale to its authorized dealers through Hyundai's Authorized Chain of Distribution for the United States and only parts sourced through Hyundai Authorized Chain of Distribution are recognized by HMA and the industry as "Genuine" Hyundai parts, covered by the applicable Hyundai warranties as described below.

14.    HMA also is the owner of certain trademarks associated with the Hyundai line of automobiles and automobile parts. HMA has an economic interest in the trademarks, trade names, trade dress and designation of origin of the mark "Hyundai" whether used alone or in conjunction with other words or marks.

15.    HMC is the owner of certain trademarks associated with the Hyundai line of automobiles and automobile parts. HMC has an economic interest in the trademarks, trade names, trade dress and designation of origin of the mark "Hyundai" whether used alone or in conjunction with other words or marks.

16.    Defendants, and each of them, directly or indirectly promote, advertise, offer for sale, and/or sell goods and products, including the products at issue in this Complaint, to third parties within this District.

17.    Plaintiffs are informed and believe, and on that basis allege, that during all times mentioned herein, each of the Defendants was the duly authorized agent, servant or representative of each other defendant and was acting at all times both on its own behalf and on behalf and within the course and scope of its agency or representative capacity, with the knowledge and consent of the other defendant.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

18.    HMC was established in 1967 and has become one of the leaders in the automotive market around the world and in the United States. Today, HMC designs, manufactures, markets, distributes, and sells a wide range of motor vehicles and parts to over 190 countries throughout the world, including in the

United States, under the trademark, Hyundai.

19.    HMA is a subsidiary of HMC.  Since 1986, HMA has been the exclusive distributor in the United States of, among other things, Hyundai motor vehicles, and Hyundai brand automobile parts and accessories.

20.    Mobis Parts America ("MPA") is the exclusive agent or representative of HMA for the sourcing and distribution of genuine Hyundai Parts.  MPA is a subsidiary company of Hyundai Mobis.

21.    The only authorized and recognized source of distribution of Hyundai Genuine Parts for the United States is from the authorized manufacturers or suppliers of those parts in Korea, through Hyundai Mobis in Korea to MPA ("Hyundai's Authorized Chain of Distribution"), who then distributes or delivers those parts on behalf of HMA to authorized Hyundai dealers in the United States ("Hyundai Dealers").

22.    HMC and HMA sell motor vehicles, automotive parts, and accessories, including the Hyundai Genuine Parts, and related services under the following family of registered United States trademarks:

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
| HYUNDAI | 1104727 | October 24, 1978 | For International Class 12 for: Cars, trucks and buses |
| HYUNDAI | 3991863 | July 12, 2011 | For International Classes 7 and 12 for: Water pumps for land vehicles; cylinder heads used on engines; pistons for land vehicles; fans for motors and engines; vehicle engine parts, namely, oil |

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
| | | | coolers; oil filters for land vehicles; vehicle parts, namely, radiator supporting panels; radiator grilles for land vehicles and |
| | | | For: Bearings for land vehicles, namely, axle bearings, engine bearings, wheel bearings; engines and motors mufflers; clutch covers for land vehicles; transmissions for land vehicles; disk brakes for land vehicles; rearview mirrors for automobiles; windscreen wipers for automobiles; rubber belts for land vehicles; fuel tanks for land vehicles; wheels caps for land vehicles; bumpers for automobiles; hoods for automobiles; doors for automobiles; trunk panels for land vehicles; bumpers for land vehicles; door handles for automobiles; aerials for automobiles; horns for automobiles |
|  | 1569538 | December 5, 1989 | For International Class 12 for: Automobiles and structural parts thereof |
|  | 4065195 | December 6, 2011 | For International Class 12 for: Bearings for land vehicles, namely, axle |

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
| | | | bearings, wheel bearings; mufflers for land vehicles; transmissions for land vehicles; rearview mirrors for automobiles; bumpers for automobiles; windscreen wipers for automobiles; seat covers for automobiles; tire chains for automobiles; radiator grills for land vehicles; body panels for vehicles; air bags for vehicles; swing doors for vehicle engines; glasses for vehicles, namely, glass windows for vehicles; clutches for land vehicles; fan motors for vehicles; air sensors for vehicles; brake pads for land vehicles; suspensions for vehicles, namely, wheel suspensions, suspension struts; springs for vehicles, namely, coil springs, leaf springs; speed sensors for vehicles; sun roofs for vehicles; fuel gauges for vehicles; oil seals for vehicles, namely, transmission seals; wiper motors for vehicles; control units for vehicles, namely, air suspension valves for controlling suspension height for vehicles, electronic stability system to allow better control and maneuverability of trucks |

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
| | | | and trailers, sold as an integral component of trucks; pedals for vehicles, namely, brake pedals, gas pedals |

23.    Specifically, HMC is the owner of U.S. Registration No. 1,104,727; U.S. Registration No. 3,991,863; and U.S. Registration No. 4,065,195 (the "HMC Marks"). HMA is the owner of U.S. Registration No. 1,569,538 (the "HMA Mark"). The HMC Marks and the HMA Mark are collectively referred to as the "HYUNDAI MARKS," copies of which registrations are attached hereto as **EXHIBIT A**.

24.    All of the above federal registrations are in full force and effect and are in good standing.

25.    HMA is also a licensee of the HMC Marks, in association or connection with the promotion, distribution, sale and service of Hyundai brand vehicles and parts, including the Hyundai Genuine Parts, in the United States.

26.    Independent of the foregoing registrations, HMA and/or HMC own and hold common-law rights in the HYUNDAI MARKS, including nationwide common-law trademarks.

27.    The HYUNDAI MARKS have, among others, all been used in commerce continuously in the United States by HMA and/or HMC prior to Defendants' usage of the same or similar marks and designation of origin, as described herein.

28.    HMA and/or HMC exercise great care in selecting the Hyundai Dealers. In doing so, substantial monies and efforts are expended by HMA and/or HMC to control the nature and quality of the goods and services which such

Dealers may employ in using the HYUNDAI MARKS. In the United States, Hyundai Dealers are required to perform certain warranty work using only Hyundai Genuine Parts and with respect to other service or repair work, if the Dealers opt to use other than Hyundai Genuine Parts, they are required to advise the customers that they are doing so.

29.   HMA and/or HMC have also expended significant time, money and effort in ensuring that the Hyundai Genuine Parts comply with its internal quality standards and with state and federal laws and regulations in the United States.

30.   For many years, HMA and/or HMC have spent millions of dollars in advertising Hyundai motor vehicles, products and related services including Hyundai's warranties and to specifically promote and develop the HYUNDAI MARKS. These substantial expenditures of time, money and effort have resulted in a reputation for exceptionally high quality standards. HMA and/or HMC have also developed marketing strategies and designed packaging, promotional materials and specific products for the market in the United States, consistent with this reputation and high quality standards. Plaintiffs vigorously protect their reputation and goodwill by maintaining the highest standards in their products, appearance, and customer service.

31.   Because of these efforts, the HYUNDAI MARKS and the products and services which use them, have developed substantial good will, and have established secondary meaning in the United States.

32.   The HYUNDAI MARKS have been famous in the United States long before the acts of Defendants set forth herein.

## THE MANUFACTURE OF HYUNDAI GENUINE PARTS

33.   A variety of suppliers from around the world--but primarily in Korea-- manufacture Hyundai parts according to HMC's specifications. These are used by Hyundai plants in Korea and the United States in the manufacture Hyundai

vehicles. These parts are also used for service, repair, and warranty work on Hyundai vehicles in the United States. Hyundai parts that are intended and destined for sale in the United States only are imported through Hyundai's Authorized Chain of Distribution.

34.     Hyundai Genuine Parts are designed and tested for the optimum safety, performance, and reliability. In addition, Hyundai Genuine Parts intended for sale, distribution, and/or use in the United States are specifically designed and manufactured in accordance with and to meet the applicable U.S. standards and regulations, including environmental and federal motor vehicle safety standards. Finally, the only parts that are Hyundai Genuine Parts are those that are imported into the United States through Hyundai's Authorized Chain of Distribution.

35.     Hyundai Genuine Parts manufactured for use in and/or sale in the United States may have material differences from those manufactured for use and/or sale outside the United States. Furthermore, parts that are not sourced through Hyundai's Authorized Chain of Distribution may have physical differences due to such parts being "seconds," rejects or defective parts Reject Parts. Because of these material differences, if a non-Hyundai Genuine Part or Reject Parts is used during the repair or servicing of Hyundai vehicles or as a replacement part for warranty work or otherwise, compatibility, performance and/or safety issues can arise.

## PLAINTIFFS' AUTHORIZED CHAIN OF DISTRIBUTION FOR HYUNDAI PARTS SOLD IN THE UNITED STATES

36.     HMC has a relationship with Hyundai Mobis (also known as Mobis Korea or Mobis HQ) which is an independent company within the Hyundai family of companies. Pursuant to an agreement with HMC, Hyundai Mobis is responsible for the sourcing of Hyundai parts from these third party manufacturers and suppliers and for the distribution throughout the world.

37.    Hyundai Mobis has distribution centers in various parts of the world. The Mobis entity that is responsible for the chain of supply and distribution within the United States of Hyundai parts is Mobis Parts America ("MPA").  MPA has entered into a contract with HMA to manage and facilitate the sale and distribution of Hyundai Genuine Parts to Hyundai Dealers in the United States.  MPA only sources Hyundai Genuine Parts from Hyundai Mobis.  Thus, the only authorized chain of distribution for Hyundai "genuine" parts for the United States is by MPA, on behalf of HMA from Hyundai Mobis.  MPA then facilitates the distribution and sale of these genuine parts on behalf of HMA to Hyundai Dealers throughout the United States ("Hyundai's Authorized Chain of Distribution").

## HMA'S WARRANTY PROGRAM

38.    HMA offers a robust warranty program that includes: (1) a New Vehicle Limited Warranty; (2) a Powertrain Limited (Original Owner) Warranty; (3) an Anti-Perforation Warranty; and (4) a Replacement Parts and Accessories Limited Warranty.

39.    The New Vehicle Limited warranty's coverage is for 5 years or 60,000 miles, and attaches to automobile purchases and covers a variety of parts incorporated within different Hyundai automobiles.   The Powertrain Limited (Original Owner) Warranty coverage period is 10 years or 100,000 miles to the original vehicle owner and covers the powertrain component.   The Anti-Perforation Warranty coverage period is 7 years and covers rust holes that develop in vehicle body sheet metal due to defects. Finally, the Replacement Parts and Accessories Limited Warranty provides, for a period of 12 months or 12,000 miles, coverage for repair or replacement of any Hyundai Genuine Part or Accessory supplied from HMA that is found to be defective in material or workmanship under normal use and maintenance.

40.    Moreover, for vehicles within the New Vehicle Limited Warranty coverage period, replacement of certain parts would be covered for 5 years or 60,000 miles under that warranty, which, in effect, "extends" the Replacement Parts and Accessories Limited Warranty coverage period through the remainder of the new vehicle warranty, which can be greater than 12 months or 12,000 miles.

41.    The HMA warranty program only applies to "Hyundai Genuine Parts," which HMA defines in its warranty documents as parts supplied from HMA (through MPA); i.e. through Hyundai's Authorized Chain of Distribution.  Thus, the HMA warranties do not extend to parts sold by entities other than HMA.  In addition, any damage to or failure of a Hyundai Genuine Part caused by the installation or failure of a non-genuine Hyundai part is not covered by any HMA warranty.

42.    HMA's warranty program – commonly referred to as "America's Best Warranty" – is a critical component in its quality control process and allows HMA to ensure that the value of its trademarks is maintained.  The warranty program is also essential to the successful marketing of Hyundai products because it provides assurance to the Hyundai customer that his or her purchase will achieve certain performance standards during the warranty period.  HMA has long recognized that the HMA warranty program has substantial value and is an important and necessary part of the automotive goods purchased by its customers.  Likewise, HMA's warranties are important and valuable to authorized dealers.  The value that the warranties add to Hyundai vehicles is the reason HMA assumes the economic cost of the warranty program and promotes and markets the warranty to customers.

43.    Parts manufactured for sale and use outside of the United States, on the other hand, carry no warranty whatsoever in the United States.  In addition, any

damage to or failure of Hyundai Genuine Parts caused by the installation or failure of an imitation part is not and would not be covered by any Hyundai warranty.

44.     Neither HMC nor HMA has authorized the sale or use of Hyundai Genuine Parts that are manufactured for use or sale outside the United States to be sold for use or used on vehicles in the United States.   Any part that is sourced by anyone outside of Hyundai's Authorized Chain of Distribution is not a Hyundai Genuine Part and is not covered by any warranty offered by Hyundai.

### DEFENDANTS' UNLAWFUL ACTS

45.     Commencing long after Plaintiffs' use of the HYUNDAI MARKS, and without Plaintiffs' consent, and within four years preceding the filing of this Complaint, Defendants have and continue to actively and knowingly import, distribute, promote, offer for sale and/or sell in the United States, replacement automotive parts bearing the HYUNDAI MARKS, which Plaintiffs did not intend for sale or use in the United States, but rather were intended for sale elsewhere, or which are Reject Parts and which parts contain material differences, physically and/or in warranty protection. Defendants are importing these parts into the United States through channels other than Hyundai's Authorized Chain of Distribution.

46.     By way of example only, Plaintiffs purchased from a Hyundai Dealer four Hyundai branded parts sold to that Dealer by a Reseller that Plaintiffs are informed and believe purchases and/or purchased Hyundai branded parts from one or more of the Defendants.  Those four parts, which the Reseller promoted and represented to be "Hyundai Genuine Accessories" or "Hyundai Genuine Parts" (collectively, the "Reseller's Parts") when they are not, consist of:

    a.     Hyundai Santa Fe Front Fascia Absorber (bumper) (part number 86520-4Z000);

    b.     Hyundai Santa Fe Chrome Grille (part number 86561-2B700);

c.     Hyundai Santa Fe Grille (part number 86351-2W000); and

d.     Hyundai Fog Lamp Assembly (for Santa Fe) (part number 92202-4Z000).

47.     Plaintiffs inspected and compared the Reseller's Parts that it purchased to corresponding Hyundai Genuine Part specifically manufactured for sale and/or use in the United States.  Through this analysis and comparison Hyundai determined that the Reseller's Parts are not in fact "genuine," but rather contain the following specific material physical differences:

a.     <u>Hyundai Santa Fe Front Fascia Absorber (bumper) (part number 86520-4Z000)</u>:

   i.     differences in the packaging, namely the Reseller's Parts were not wrapped in any protective packaging such as a clear plastic bag;

   ii.    differences in where the part label is adhered, namely the labels for the Reseller's Parts were adhered directly on the product instead of the packaging;

   iii.   differences in the appearance of the Hyundai logo imprinted on the Reseller's Parts as compared with the Hyundai Genuine Part;

   iv.    differences in the weight of the Products, specifically, the Reseller's Parts are 7.2% lighter than the Hyundai Genuine Part.

b.     <u>Hyundai Santa Fe Chrome Grille (part number 86561-2B700)</u>:

    i.      differences in where the part number information is located, namely the part number information for the Reseller's Parts is attached to the white plastic envelope instead of a shipping box;

    ii.     differences in the packaging, namely the Reseller's Parts did not have their own box but were packaged in a white plastic envelope;

    iii.    differences in the part assembly, specifically the Reseller's Parts are made up of three separate parts, while the Hyundai Genuine Part is a single replacement part, not an assembly;

    iv.    differences in the manufacture of the part, namely the Reseller's Parts contain a mesh type grill assembly, while the Hyundai Genuine Part does not;

    v.     differences in the part number molded into the product, namely a different part number is molded into the Reseller's Parts.

c.    <u>Hyundai Santa Fe Grille (part number 86351-2W000)</u>:

    i.      differences in where the part number information is located namely the part number information for the Reseller's Parts is attached to bubble wrap instead of a shipping box;

    ii.     differences in the packaging, namely the Reseller's Parts did not have their own box but were packaged in bubble wrap;

    iii.    differences in the manufacture of the part, namely the Reseller's Parts have a chrome Hyundai logo and chrome trim attached to the product, while the Hyundai Genuine Part does not contain chrome;

    iv.    differences in the manufacture of the part, namely the Reseller's Parts have support arms attached to each Product while the Hyundai Genuine Part does not;

    v.    differences in the quality of the part, namely one of the samples of  the Reseller's Parts is cracked and the chrome layer has peeled away, and has an inspection sticker indicating that the part is damaged and/or has been rejected for quality issues;

    vi.    differences in the assembly, namely the Reseller's Part is an assembly line type sub-assembly that include ten separate parts.

d.    <u>Hyundai Fog Lamp Assembly (For Santa Fe) (part number 92202-4Z000)</u>:

    i.    differences in the packaging, namely the Reseller's Part did not have its own box but was packaged in bubble wrap;

    ii.    differences in the part number label, namely the Reseller's Part had a non-OEM type part number label, which was adhered to the bubble wrap;

    iii.    differences in the quality of part, namely one of the Reseller's Part samples ("Sample 1") has an inspection

sticker on the part indicating that it is damaged and/or has been rejected for quality issues;

iv. differences in the quality of the part, namely the inboard mounting tab on the Sample 1 Reseller's Part has been broken off, and was not otherwise present in the packaging or wrapping;

v. differences in the quality of the part, namely a repair was attempted on the Sample 1 Reseller's Part, and thus, is no longer "new";

vi. differences in the assembly of the part; namely the inboard ball and socket mount on the Sample 1 Reseller's Part is not properly engaged which allows the lamp housing to be loose and wobble on the bracket;

vii. differences in the quality of part, namely the second Reseller's Part sample ("Sample 2") has an inspection sticker on the part indicating that has been rejected;

viii. differences in the quality of the part, namely the outboard mount between the lamp housing and bracket on the Sample 2 Reseller's Part is broken; and

ix. differences in the quality and/or the assembly of part, namely the Sample 2 Reseller's Part has a black rubber block mounted between the light housing and bracket; the rubber block is not a normal piece of the assembly, and appears to be stabilizing the lamp and housing due to broken mount.

48.     Since these parts have not been imported or sourced through Hyundai's Authorized Chain of Distribution, and/or are Reject Parts, the Reseller's Parts have not been subjected to the exacting quality and/or safety standards associated with the Hyundai Genuine Parts, cannot be verified back through their channels of distribution, are not equivalent to the Hyundai Genuine Parts in quality, design and/or performance, and do not originate with, and/or are not sponsored by Plaintiffs in the United States.   Plaintiffs have never imported, promoted, distributed and/or sold into the United States the Reseller's Parts, and have never authorized the importation, promotion, distribution and/or sale of the Reseller's Parts for sale and/or use in the United States.

49.     Moreover, Plaintiffs are informed and believe, and thereon allege, that Defendants do not offer any warranty on the Reseller's Parts that they sell, much less a warranty that is equivalent to the HMA warranties.

50.     Plaintiffs are further informed and believe, and thereon allege, that Defendants are intentionally inducing Resellers to infringe the HYUNDAI MARKS by, among other things, representing to those Resellers that Defendants' parts are "genuine," leading those Resellers to believe that the HMA warranties apply to the parts (when they do not) and that they thus do not need to (and do not) offer an equivalent warranty to dealers or end-customers.

51.     Plaintiffs are further informed and believe, and thereon allege, that Defendants' representations regarding the "genuineness" of the parts also makes the Resellers unaware of the physical material differences between Defendants' parts and parts obtained through Hyundai's Authorized Chain of Distribution. Thus, the Resellers do not advise dealers and end-customers of those physical material differences.   Instead, the Resellers are intentionally induced by Defendants to infringe the HYUNDAI MARKS by advising their customers that Defendants' parts are "genuine" when they are not.

52.     Parts sold by Defendants and later re-sold by their Resellers are not covered under HMA's and/or HMC's warranty and have one or more material physical differences compared to the Hyundai Genuine Parts which are meant for sale and use in the United States.  Defendants' products thus constitute illegal "gray market" goods.

53.     By selling the Reseller's parts in the United States, without Plaintiffs' consent, Defendants have taken away Plaintiffs' ability to control the quality of their products, to control the chain of distribution and misrepresented to the Resellers, Hyundai Dealers and/or end consumers the origin and quality of the Hyundai brand and warranty protection or coverage with respect to such parts.

54.     Defendants have knowingly used in commerce a reproduction, copy or colorful imitation of the HYUNDAI MARKS in connection with the sale, offering for sale, distribution, and/or advertising of the Non-Genuine Hyundai Parts which such use is likely to cause confusion, or to cause mistake, and/or to deceive.

55.     Defendants have, among other things, knowingly reproduced, copied or colorably imitated Plaintiffs' rights in the common-law and registered HYUNDAI MARKS and have knowingly applied such reproduction, copy, or colorable imitation to advertisements, websites, labels, signs, prints, packages, wrappers, or receptacles intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.  The Reseller's parts sold by Defendants differ materially from the Reseller's Parts as described herein, and do not originate with, are not sponsored by and are not distributed by Plaintiffs.

56.     Defendants are intentionally and willfully importing, purchasing, advertising, promoting, distributing, offering for sale, and/or selling in the United

States, without Plaintiffs' authorization and/or consent, the Non-Genuine Hyundai Parts to unfairly and fraudulently compete with Plaintiffs, and to benefit from the valuable and favorable reputation and goodwill of the HYUNDAI MARKS, the Hyundai products, including but not limited to the Hyundai Genuine Parts, and the Hyundai brand.

57.     Defendants have and continue to use the HYUNDAI MARKS in such a fashion as to intentionally create a false impression among the consuming public that their goods originate from Plaintiffs or are sponsored, approved by, managed and/or affiliated with Plaintiffs, and to misrepresent the origin and quality of goods sold.

58.     Defendants' foregoing acts were and are likely and intended to cause confusion and mistake among the public, including Hyundai Dealers, customers, prospective customers, and others and to deceive them as to, among other things, (i) the affiliation, connection, and association of Defendants with Plaintiffs, (ii) the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiffs, and (iii) the nature, characteristics, and quality of Defendants' goods, services or commercial activities; all of which was and is for the purpose of enhancing the commercial value of, or selling or soliciting sales of, Defendants' products, goods or services.

59.     By reason of the foregoing, Plaintiffs have suffered and will continue to suffer damage to their property, business, reputation, and goodwill, and have suffered and will continue to suffer dilution of the distinctive quality of the HYUNDAI MARKS, and have lost and will continue to lose income and profits that Plaintiffs would have earned but for Defendants' foregoing acts, in an amount in excess of the jurisdictional limits of this Court.

60.     The acts of Defendants alleged herein were knowing, intentional, willful and extraordinary.

61.    Plaintiffs' remedy at law is inadequate to compensate Plaintiffs fully for their injuries.  Defendants are continuing the foregoing activities and, unless enjoined, will continue to do so, all to Plaintiffs' irreparable damage.  It would be extremely difficult or impossible to estimate the amount of compensation which would afford Plaintiffs complete monetary relief for such continuing acts.   A multiplicity of judicial proceedings would be required in the absence of appropriate injunctive relief.

## FIRST CAUSE OF ACTION

## FOR TRADEMARK INFRINGEMENT (15 U.S.C. §1114)

62.    Plaintiffs hereby re-allege the allegations set forth in Paragraphs 1 through 59 above.

63.    Defendants' importation, promotion, distribution, use and/or threatened continued use in commerce of the Reseller's Parts which bear trademarks that are identical or nearly identical to federally registered HYUNDAI MARKS constitutes a wrongful use of an unauthorized reproduction, copy or colorable imitation of one or more of the registered HYUNDAI MARKS.

64.    Defendants' importation, promotion, sale and/or distribution of the Reseller's Parts have caused and/or are likely to continue to cause confusion, or to cause mistake, or to deceive, including but not limited to whether Plaintiffs guarantee and/or warrant the quality of the Reseller's Parts.

65.    Defendants' willful acts are intended to reap the benefit of Plaintiffs' reputation and good will that they have created in their HYUNDAI MARKS, and constitutes infringement of the federally registered trademarks, which HMA and/or HMC own and/or of which HMA is the exclusive licensee, in violation of sections 32, 34 and 35 of the Lanham Act (15 U.S.C. §§1114, 1116 and 1117).

66.    As a direct and proximate result of Defendants' illegal and willful activities, Plaintiffs have suffered and will continue to suffer damages in an

amount presently unknown and to be ascertained at the time of trial, but in an amount in excess of the jurisdictional limits of this Court.

67.     Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Plaintiffs, including their business, reputation, and goodwill, and will continue to damage Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

68.     Defendants' infringement of the HYUNDAI MARKS is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of the HYUNDAI MARKS and an exceptional case within the meaning of the Lanham Act §35 (15 U.S.C. §1117).  Plaintiffs are therefore entitled to recover three times the amount of their actual damages and the attorneys' fees and costs incurred in this action.

WHEREFORE, Plaintiffs seek judgment as set forth herein.

## SECOND CAUSE OF ACTION

## INDUCEMENT OF TRADEMARK INFRINGEMENT (15 U.S.C. §1114)

69.     Plaintiffs hereby re-allege the allegations set forth in Paragraphs 1 through 66 above.

70.     The importation, promotion, distribution, use and/or threatened continued use in commerce by Resellers of the Reseller's Parts which bear trademarks that are identical or nearly identical to federally registered HYUNDAI MARKS constitutes a wrongful use of an unauthorized reproduction, counterfeit, copy or colorable imitation of one or more of the registered HYUNDAI MARKS.

71.     The Reseller's importation, promotion and distribution of the Reseller's Parts have caused and/or are likely to continue to cause confusion, or to cause mistake, or to deceive, including but not limited to whether Plaintiffs guarantee and/or warrant the quality of the Reseller's Parts.

72.     The Reseller's acts are intended to reap the benefit of Plaintiffs' reputation and good will that they have created in their HYUNDAI MARKS, and constitute infringement of the federally registered trademarks, which HMA and/or HMC own and/or of which HMA is the exclusive licensee, in violation of sections 32, 34 and 35 of the Lanham Act (15 U.S.C. §§1114, 1116 and 1117).

73.     Also, Plaintiffs are informed and believe, and thereon allege, that Defendants are intentionally inducing Resellers to infringe the HYUNDAI MARKS by, among other things, representing to those Resellers that Defendants' parts are "genuine," leading those Resellers to believe that HMA warranties apply to the parts (when they do not) and that they thus do not need to (and do not) offer an equivalent warranty to dealers or end-customers.

74.     Plaintiffs are further informed and believe, and thereon allege, that Defendants' representations regarding the "genuineness" of the parts also makes the Resellers unaware of the physical material differences between Defendants' parts and parts obtained through the Plaintiffs' authorized distribution channel for the United States.  Thus, the Resellers do not advise dealers and end-customers of those physical material differences.  Instead, the Resellers are intentionally induced by Defendants to infringe the HYUNDAI MARKS by advising their customers that Defendants' parts are "genuine" when they are, in fact, illegal gray market parts.

75.     As a direct and proximate result of Defendants' illegal and willful activities, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial, but in an amount in excess of the jurisdictional limits of this Court.

76.     Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Plaintiffs, including their business, reputation, and

goodwill, and will continue to damage Plaintiffs and deceive the public unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs seek judgment as set forth herein.

## THIRD CAUSE OF ACTION

## CONTRIBUTORY TRADEMARK INFRINGEMENT (15 U.S.C. §1114)

77. Plaintiffs hereby re-allege the allegations set forth in Paragraphs 1 through 74 above.

78. The importation, promotion, distribution, use and/or threatened continued use in commerce by Reseller's Parts which bear trademarks that are identical or nearly identical to federally registered HYUNDAI MARKS constitutes a wrongful use of an unauthorized reproduction, counterfeit, copy or colorable imitation of one or more of the registered HYUNDAI MARKS.

79. The Reseller's importation, promotion and distribution of the Reseller's Parts have caused and/or are likely to continue to cause confusion, or to cause mistake, or to deceive, including but not limited to whether Plaintiffs guarantee and/or warrant the quality of the Reseller's Parts.

80. The Reseller's acts are intended to reap the benefit of Plaintiffs' reputation and good will that they have created in their HYUNDAI MARKS, and constitute infringement of the federally registered trademarks, which HMA and/or HMC own and/or of which HMA is the exclusive licensee, in violation of sections 32, 34 and 35 of the Lanham Act (15 U.S.C. §§1114, 1116 and 1117).

81. Also, Plaintiffs are informed and believe, and thereon allege, that Defendants knew or had reason to know that Resellers would use the Reseller's Parts to infringe the HYUNDAI MARKS. Among other things, Defendants represent to those Resellers that Defendants' parts are "genuine," knowing or having reason to know that the Resellers would believe that the HMA warranties

apply to the parts (when they do not) and that they thus do not need to (and do not) offer an equivalent warranty to dealers or end-customers.

82.     Plaintiffs are further informed and believe, and thereon allege, that Defendants' representations regarding the "genuineness" of the parts also makes the Resellers unaware of the physical material differences between Defendants' parts and parts obtained through the Plaintiffs' authorized distribution channel for the United States.   Thus, the Resellers do not advise dealers and end-customers of those physical material differences.   Defendants know or have reason to know that the Resellers infringe the HYUNDAI MARKS by not advising their customers that Defendants' parts are "genuine" when they are, in fact, illegal gray market parts.

83.     As a direct and proximate result of Defendants' illegal and willful activities, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial, but in an amount in excess of the jurisdictional limits of this Court.

84.     Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Plaintiffs, including their business, reputation, and goodwill, and will continue to damage Plaintiffs and deceive the public unless enjoined by this Court.   Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs seek judgment as set forth herein.

### FOURTH CAUSE OF ACTION

### FOR FALSE DESIGNATION OF ORIGIN (15 U.S.C. §1125(a)(1)(A))

85.     Plaintiffs hereby re-allege the allegations set forth in Paragraphs 1 through 82 above.

86.     Defendants' use and threatened continued use in connection with importing, selling, offering for sale, advertising, marketing, promoting and packaging the Reseller's Parts bearing the HYUNDAI MARKS and/or marks

which are identical or nearly identical to the HYUNDAI MARKS and trade names, trade dress, wrappers, packaging and words, terms, names, symbols, and/or devices that suggest that Defendants' goods originated with, were manufactured by or are sponsored by Plaintiffs constitute a false designation of origin and a false description and representation of Defendants' business and products. Defendants' acts and each of them are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Plaintiffs, or as to the origin, sponsorship or approval of Defendants' goods, services or commercial activities by Plaintiffs.

87.    The aforesaid wrongful acts of Defendants constitute the use of a false designation of origin and false description of representation, in violation of section 43(a) of the Lanham Act (15 U.S.C. §1125(a)(1)(A)).

88.    As a direct and proximate result of Defendants' illegal activities, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial, but in an amount in excess of the jurisdictional limits of this Court.

89.    Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Plaintiffs, including their business, reputation, and goodwill, and will continue to damage Plaintiffs and deceive the public unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

90.    Defendants' use of the HYUNDAI MARKS is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of the HYUNDAI MARKS and an exceptional case within the meaning of the Lanham Act §35 (15 U.S.C. §1117). Plaintiffs are therefore entitled to recover three times the amount of their actual damages and the attorneys' fees and costs incurred in this action.

WHEREFORE, Plaintiffs seek judgment as set forth herein.

## FIFTH CAUSE OF ACTION

## FOR FALSE DESIGNATION OF ORIGIN (15 U.S.C. §1125(a)(1)(B))

91.    Plaintiffs hereby re-allege the allegations set forth in Paragraphs 1 through 88 above.

92.    Defendants' use and threatened continued use in connection with importing, selling, offering for sale, commercial advertising, marketing, promoting and packaging of the Reseller's Parts bearing the HYUNDAI MARKS and/or marks which are identical or nearly identical to the HYUNDAI MARKS and trade names, trade dress, wrappers, packaging and words, terms, names, symbols, and/or devices that suggest that Defendants' goods originated with, were manufactured by or are sponsored by Plaintiffs constitute a false designation of origin and a false description and representation of Defendants' business and products.  Defendants' acts and each of them are likely to cause confusion, or to cause mistake, or to deceive as to nature, characteristics, qualities, and/or geographic origin of Defendants' goods, services or commercial activities by Plaintiffs.

93.    The aforesaid wrongful acts of Defendants constitute the use of a false designation of origin and false description of representation, in violation of section 43(a) of the Lanham Act (15 U.S.C. §1125(a)(1)(B).

94.    As a direct and proximate result of Defendants' illegal activities, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial, but in an amount in excess of the jurisdictional limits of this Court.

95.    Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Plaintiffs and will continue to damage Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

96.    Defendants' use of the HYUNDAI MARKS is deliberate, willful,

fraudulent and without any extenuating circumstances, and constitutes a knowing use of the HYUNDAI MARKS and an exceptional case within the meaning of the Lanham Act §35 (15 U.S.C. §1117). Plaintiffs are therefore entitled to recover three times the amount of their actual damages and the attorneys' fees and costs incurred in this action.

WHEREFORE, Plaintiffs seek judgment as set forth herein.

## SIXTH CAUSE OF ACTION

## FOR TRADEMARK DILUTION (15 U.S.C. §1125(c))

97.   Plaintiffs hereby re-allege the allegations set forth in Paragraphs 1 through 94 above.

98.   The HYUNDAI MARKS have been and continue to be "famous" as defined by 15 U.S.C. § 1125(c)(1) due to their continued and extensive use in advertising and marketing. The HYUNDAI MARKS were famous well before Defendants imported, distributed, offered for sale, or sold the Reseller's Parts.

99.   Defendants' use and threatened continued use of the marks which are identical or nearly identical to the HYUNDAI MARKS, through the unauthorized importation, promotion, distribution and/or sale of the Reseller's Parts, do not comply with Plaintiffs' quality and/or safety control policies has and will continue to tarnish Plaintiffs' reputation and dilute and injure the value of the HYUNDAI MARKS as indicators of high quality goods that consumers expect from Plaintiffs, is in willful violation of section 43(c) of the Lanham Act (15 U.S.C. §1125(c)).

100.   As a direct and proximate result of Defendants' illegal activities, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial, but in an amount in excess of the jurisdictional limits of this Court.

101.   Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Plaintiffs, including their business, reputation, and

goodwill, and will continue to damage Plaintiffs and deceive the public unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

102. Defendants' dilution of the HYUNDAI MARKS is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of the HYUNDAI MARKS and an exceptional case within the meaning of the Lanham Act §35 (15 U.S.C. §1117). Plaintiffs are therefore entitled to recover three times the amount of their actual damages and the attorneys' fees and costs incurred in this action.

WHEREFORE, Plaintiffs seek judgment as set forth herein.

## SEVENTH CAUSE OF ACTION

## FOR COMMON LAW TRADEMARK INFRINGEMENT

103. Plaintiffs hereby re-allege the allegations set forth in Paragraphs 1 through 100 above.

104. Defendants' acts alleged herein and specifically, without limitation, Defendants' use of the HYUNDAI MARKS, infringe Plaintiffs' exclusive trademark rights in the HYUNDAI MARKS, in violation of the common law.

105. Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Plaintiffs and will continue to damage Plaintiffs and deceive the public unless enjoined by this Court. Plaintiffs have no adequate remedy at law in that the amount of their damages is difficult to ascertain with specificity.

106. As a result of Defendants' acts as alleged above, Plaintiffs have incurred damages in an amount to be proven at trial consisting of among other things, diminution in the value of the goodwill associated with the HYUNDAI MARKS.

WHEREFORE, Plaintiffs seek judgment as set forth herein.

## EIGHTH CAUSE OF ACTION

**FOR COMMON LAW UNFAIR COMPETITION**

107.   Plaintiffs hereby re-allege the allegations set forth in Paragraphs 1 through 104 above.

108.   Upon information and belief, Defendants have engaged in and continue to engage in unfair competition by using the HYUNDAI MARKS, on information and belief, with the intention of interfering with and trading on the business reputation and goodwill engendered by Plaintiffs through hard work and diligent effort, and "passing off" their goods as those of another, namely Plaintiffs.

109.   Defendants' acts have caused Plaintiffs competitive injury, as described herein, and specifically have caused Plaintiffs to incur damages in an amount to be proved at trial consisting of among other things, diminution in the value of and goodwill associated with the HYUNDAI MARKS.

110.   Defendants' acts as alleged above, and specifically, without limitation, Defendants' use of the HYUNDAI MARKS, if not enjoined, will continue.   Plaintiffs have no adequate remedy at law in that amount of their damages is difficult to ascertain with specificity.

WHEREFORE, Plaintiffs seek judgment as set forth herein.

## NINTH CAUSE OF ACTION

## VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT,

## MICH. COMP. LAWS § 445.901, *et seq.*

111.   Plaintiffs hereby re-allege the allegations set forth in Paragraphs 1 through 108 above.

112.   Defendants, through their above-described conduct, have engaged in unlawful, unfair, and/or fraudulent business practices within the meaning of Michigan Consumer Protection Act, Mich. Com. Laws § 445.901 *et seq.* by causing a probability of confusion as to the source, sponsorship, approval, or certification of Defendants' goods.

113.   Defendants have engaged in unlawful and unfair business practices and have conducted unfair, description, and/or misleading advertising that has injured and threatens to continue to injure Plaintiffs in their business and property. As a consequence, Plaintiffs are entitled, under the Michigan Consumer Protection Act, to an injunction and restitution, as set forth below.

114.   As the direct and proximate result of Defendants' conduct, Plaintiffs have suffered, and will continue to suffer, irreparable injury to their business, reputation, and goodwill.  This harm cannot be adequately compensated by money damages and Plaintiffs have no adequate remedy at law.

115.   As the direct and proximate result of Defendants' conduct, Plaintiffs have also suffered monetary damages in an amount not yet ascertained, but to be proven at the time of trial.  In addition, Defendants have been unjustly enriched by their conduct and should be ordered to disgorge any and all profits earned as a result of such unlawful conduct.

WHEREFORE, Plaintiffs seek judgment as set forth herein.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

(a)   That this Court temporarily, preliminarily, and permanently enjoin and restrain Defendants, their officers, directors, servants, employees, attorneys, agents, representatives, and distributors, and all other persons acting in concert or participation with Defendants from:

     i.   misrepresenting in any way the source of origin, or the nature or quality of Defendants' Reseller's Parts;

     ii.   making, manufacturing, importing, using, distributing, shipping, licensing, selling, developing, displaying, delivering, advertising and/or otherwise marketing or disposing of Defendants' Reseller's Parts;

      iii.    disposing of, destroying, moving, relocating or transferring any and all of Defendants' Reseller's Parts, as well as packaging and other items including advertising, promotion, drawings, transfers, brochures, catalogs, stationery, business forms, business cards, labels, stickers, etc. relating to Defendants' Reseller's Parts;

(b)    order Defendants to file with this Court and serve upon Plaintiffs within 30 days of being served with this Court's injunction issued in this action, a written report signed by Defendants under oath, setting forth in detail the manner in which Defendants complied with the injunction;

(c)    issue on order directing U.S. Customs and Border Protection to refuse entry to the United States of automobile parts or accessories bearing the HYUNDAI MARKS by Defendants pursuant to 15 U.S.C. § 1125(b) and/or as otherwise provided by law;

(d)    preliminarily and permanently enjoin Defendants from further conduct which infringes the HYUNDAI MARKS;

(e)    award Plaintiffs compensatory damages, including but not limited to their actual damages, Defendants' profits, and costs pursuant to 15 U.S.C. §1117(a) and/or as otherwise provided by law;

(f)    award Plaintiffs enhanced and/or treble damages pursuant to 15 U.S.C. § 1117(a), and/or as otherwise provided by law;

(g)    award Plaintiffs their attorney's fees, pursuant to 15 U.S.C. § 1117(a).

(h)    award Plaintiffs punitive damages as provided by law;

(i)    award Plaintiffs restitution as provided by law;

(j)    order Defendants to account to Plaintiffs for all profits from their infringement of HYUNDAI MARKS;

(k)    award Plaintiffs their costs, disbursements, and attorneys' fees

2:16-cv-14430-MAG-RSW   Doc # 1   Filed 12/21/16   Pg 35 of 36   Pg ID 35

incurred in bringing this action;

      (l)     award Plaintiffs prejudgment interest as provided by law; and

      (m)    award Plaintiffs such other and further relief as this Court may deem

just and proper.

Dated: December 21, 2016        CLARK HILL PLC


              By: /s/Daniel J. Scully, Jr.
                   Daniel J. Scully, Jr.
                   CLARK HILL PLC
                   500 Woodward Avenue, Suite 3500
                   Detroit, MI  48226
                   T:  (313) 965-8468
                   F:  (313) 309-6868
                   Email:  dscully@clarkhill.com
                   (P36530)

                   Kenneth E. Keller
                   KELLER, SLOAN, ROMAN
                      & HOLLAND LLP
                   555 Montgomery Street, 17th Floor
                   San Francisco, CA  94111
                   T:  (415) 249-8330
                   F:  (415) 249-8333
                   kkeller@ksrh.com
                   (SBN 71450)

                   Attorneys for Plaintiffs
                   HYUNDAI MOTOR AMERICA, INC. and
                   HYUNDAI MOTOR COMPANY

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury in this action on any issue triable of right by a jury.

Dated:  December 21, 2016                CLARK HILL PLC


By: /s/Daniel J. Scully, Jr.
    Daniel J. Scully, Jr.
    CLARK HILL PLC
    500 Woodward Avenue, Suite 3500
    Detroit, MI  48226
    T:  (313) 965-8468
    F:  (313) 309-6868
    Email:  dscully@clarkhill.com
    (P36530)

    Kenneth E. Keller
    KELLER, SLOAN, ROMAN
      & HOLLAND LLP
    555 Montgomery Street, 17th Floor
    San Francisco, CA  94111
    T:  (415) 249-8330
    F:  (415) 249-8333
    kkeller@ksrh.com
    (SBN 71450)

    Attorneys for Plaintiffs
    HYUNDAI MOTOR AMERICA, INC. and
    HYUNDAI MOTOR COMPANY